IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 18, 2011

# ROMALIS GRAY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Maury County**
**No. 17685     Stella L. Hargrove, Judge**

**No. M2010-00532-CCA-R3-PC - Filed February 14, 2012**

Petitioner, Romalis Gray, pled nolo contendere to attempted second degree murder and received a sentence of 8 years in the Department of Correction. In this appeal from the denial of post-conviction relief, Petitioner asserts that his guilty plea was not knowing and voluntary because the trial court failed to comply with the requirements of *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977) and Rule 11 (c) of the Tennessee Rules of Criminal Procedure. He argues the trial court failed to: (1) advise him that if he pled guilty, the court could question him under oath, and those answers could be used against him in a prosecution for perjury if the statements were false; and (2) advise him of the right to confront and cross-examine the witnesses against him. After a thorough review of the record, we conclude that Petitioner has failed to show that his guilty plea was not knowing and voluntary and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined. JUDGE J.C. MCLIN was originally on the panel to which this case was assigned. Judge McLin died September 3, 2011, and we acknowledge his faithful service to this Court.

Stanley K. Pierchoski, Lawrenceburg, Tennessee, (on appeal), and Ronald G. Freemon, Columbia, Tennessee, (at trial), for the appellant, Romalis Gray.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Mike Bottoms, District Attorney General; Kimberly Cooper, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

At the plea submission hearing, the Assistant District Attorney general gave the following information as a factual basis for the plea:

> We can stipulate, Your Honor, however in this particular matter, the allegations were that his girlfriend, she would testify that she was stabbed some 29 times. The police were called and she told the police it was Mr. Gray that did it. A BOLO was put out for Mr. Gray, his car was located in Davidson County with him inside. He was all bloody, he had a knife. DNA was tracked to both him and to the victim in the case.

## II. Post-Conviction Hearing

Petitioner testified that he was originally charged with attempted first degree murder and pled guilty to attempted second degree murder. He later filed a motion to withdraw his guilty plea, but then decided to proceed with a post-conviction petition. Petitioner testified that he appeared in court with trial counsel approximately five times. He said that he did not speak to counsel by phone, and he stopped by trial counsel's office on one occasion, but was unable to speak with him. He also said that trial counsel came to see him once at the jail. Petitioner testified that trial counsel failed to ask for a dismissal of the charges after the State did not produce the victim as ordered by the trial court. He then wrote a letter to trial counsel concerning the dismissal, but counsel did not respond.

Petitioner claimed that trial counsel failed to file a motion for discovery, and that Petitioner had to file his own motion while he was incarcerated. He said that the State then forwarded him "[m]ost" of the evidence. Petitioner admitted that trial counsel met with him to review the State's case; however, they did not discuss a "defense plan." He said that the only defense mentioned by trial counsel was that the victim "was never coming to court." Petitioner testified that he later met with trial counsel and the State to discuss a twelve-year plea offer to aggravated assault, which trial counsel recommended that he take. Petitioner claimed that trial counsel "thought he couldn't defend me, because he said I had no recollection of what happened. At the time, you know, we had no defense plan." He admitted that he told trial counsel that he could not remember what happened at the time of the offenses. Petitioner testified that trial counsel did not file a motion to suppress or any motions to limit the evidence.

Petitioner felt that he was misled by trial counsel because:

> He told me that they had contacted the victim, that she was downstairs at the time, and this was my last chance to take the plea or they were gonna take me

to trial. And maybe I'd get 45 years at a 100 percent if I was to go to trial. And then, come to find out, a witness never was served or subpoenaed at all, and he had a bad address on him. And she never was at court. Never came to court. Never.

He further said:

He told me I was offered by the State, 12 years, at 30 percent, for aggravated assault. And I told him at the time I wasn't gonna take nothing [    ] in double digits. And he came back and said they gave me eight years but he didn't say what for. He would give me eight years at 30 percent. But he didn't tell me what crime I was pleading to until I took the plea, when Ms. Hargrove told me I was pleading to second-degree murder.

Petitioner testified that he attended school through the twelfth grade, but did not graduate. He was never designated as a special education student, and he had no learning disabilities or vision problems. Petitioner agreed that he signed the plea agreement, but that he did not sign it until after he verbally entered the plea. He said that he would not have entered into a nolo contendere plea if he had understood that a nolo contendere plea was the same as a guilty plea. Petitioner claimed that trial counsel did not explain the plea to him, and he thought that he was pleading nolo contendere to aggravated assault rather than attempted second degree murder. He said that he was taking medication for "depression and stuff" at the time of the plea. He admitted that he understood most of the questions asked by the judge at the plea submission hearing. Petitioner testified that trial counsel and the prosecutor badgered him into entering the plea, and he felt pressured. He said that based on what he knew about his case, he would rather have gone to trial. Petitioner admitted that he freely and voluntarily entered the plea, but he thought that he would serve thirty percent and be released.

On cross-examination, Petitioner testified that he met with trial counsel, an assistant district public defender, three times in court and once at the jail. He also met with the Public Defender on one occasion in the courthouse basement. Petitioner testified that trial counsel explained the nature of the charges against him and the possible sentence; however, they did not discuss a defense plan. He said that in addition to attempted first degree murder, he was charged with violating an order of protection which he and trial counsel did not discuss. Petitioner testified that trial counsel discussed pleading to aggravated assault with a twelve-year sentence, and he explained the meaning of the sentence.

Petitioner testified that trial counsel discussed some of the evidence against him, and he was not aware that the court file contained a motion for discovery filed by the Public Defender's Office on March 18, 2008. He said that trial counsel did not show him any

photographs of the victim and that he only saw DNA evidence. He was aware that the knife found in his possession contained both his DNA and the victim's DNA. Petitioner admitted that he remembered what happened at the time of the offense and that he lied to trial counsel when he said that he could not recall anything. He said that trial counsel did not advise him of his rights, including the right to face his accuser.

Petitioner remembered appearing in front of the trial court and entering a plea to attempted second degree murder, and he understood the plea. However, he claimed that he did not understand that he was supposed to plead guilty to attempted second degree murder. He said:

> I thought I was supposed to plead to aggravated assault until she read that. And I looked at him; he told me it don't matter, it's the same time. He told me it was the same time anyway, it didn't matter about the charge. I was still getting a good deal, that's his words.

Petitioner admitted that he wrote a letter to the trial court indicating that he no longer wanted to set aside his guilty plea. In the letter he told the court that "I know that now I've got a good deal."

Petitioner agreed that at the plea submission hearing, he told the trial court that he understood the wording in the paperwork and that he did not have any questions. He also told the trial court that he was taking medication but understood what was going on. Petitioner also admitted that he told the trial court no one made any threats or promises to him, and Petitioner acknowledged the trial court advised him of his right to a jury trial. He told the trial court that he was satisfied with trial counsel's representation, and he declined the opportunity to discuss anything privately with the court. Petitioner testified that he thought the victim would never show up for court, and he admitted writing to the victim instructing her to drop the charges, get him out of jail, and not show up for court.

Trial counsel testified that he had been employed as a public defender for twenty-four years, and he first met with Petitioner at the jail on December 1, 2007. Petitioner was charged with attempted first degree murder and aggravated domestic assault. Trial counsel testified that Petitioner initially said that nothing happened. He claimed that he and the victim argued and that she cut him on the hand and said that she was going to kill him. Petitioner subsequently advised trial counsel that there was a previous order of protection against Petitioner. Petitioner claimed that the victim attempted to stab him with a knife and that he grabbed the knife from the victim and stabbed her in the rear end. He claimed that the victim began stabbing herself, and he left when she called police. Trial counsel testified that he also had a brief discussion with Petitioner's mother.

Trial counsel testified that he conducted the preliminary hearing, at which the victim was not present. A motion to dismiss was made prior to the hearing, but it was denied. Trial counsel cross-examined all of the State's witnesses at the preliminary hearing, and he did not call any defense witnesses. Petitioner's case was then bound over to the grand jury on the charges of aggravated domestic assault and attempted first degree murder. Trial counsel testified that he met with Petitioner several times at the courthouse after he was indicted. He said there were at least two meetings in trial counsel's office, which lasted approximately thirty to forty-five minutes each. Trial counsel testified that a discovery motion normally would have been filed within a week of the appointment of the Public Defender's Office to represent Petitioner in Circuit Court, and a motion for discovery was filed in Petitioner's case. He later received discovery material from the State, and he reviewed it at length with Petitioner in trial counsel's office.

Concerning a defense plan, trial counsel testified:

Defense plan would be basically two defense plans: The initial defense plan was to attack mens rea of the charge. He talked to other people at our office, as he testified to; he told other people that he did not remember. On at least two occasions, he discussed the actual facts with me about what he did with her, not necessarily all of it, because he would say I don't remember that part.

But based on this, the initial defense would be attacking mens rea. I think the State [ ] had a mens rea problem of premeditation, intentional, and we would have been attacking that, initially, at the first trial.

He said that if the case had gone to trial, he would have attacked the mens rea through the State's witnesses, and he discussed it with Petitioner. Trial counsel testified that he made several attempts to contact the victim, but he was unable to locate her. He said that the victim had told Detective Cooper that she did not want to come back to court to testify. The information was raised with the trial court, and trial counsel made a motion to dismiss the charges. The trial court refused to dismiss the charges but granted petitioner bond. Concerning other witnesses, trial counsel testified that he either talked with them or had information as to what their testimony would be. He noted that a subpoena was not served on one witness, a neighbor who "may have heard a ruckus, argument, fight going on." Trial counsel did not expect the witness to show up at court.

Trial counsel testified that he discussed the plea agreement with petitioner prior to the plea submission hearing. He said:

His trial rights would have been gone over with him prior to the date of entering the plea in court. When he came to Court to enter the plea it would

have been discussed along with his trial rights with him again, to make sure that he has a full understanding of what he's doing. And no coercion. It's his rights. It's not our rights.

Trial counsel testified that he knew Petitioner was on medication for some type of psychotic condition at the time of the plea. However, he was not concerned that Petitioner did not understand what he was doing, and he was not concerned about Petitioner's demeanor. He never pressured Petitioner to take the plea. Trial counsel testified that he and Petitioner had many discussions about the fact that if the victim did not appear, "the State would not have a case."

On cross-examination, trial counsel testified that he was in private practice for ten years prior to working in a public defender's office. His thirty-four year legal career had been primarily based on criminal defense work. Trial counsel testified that Petitioner had a case pending with the same victim when he committed the present offenses. He said that the victim was stabbed upward of twenty times in this case. The case was set for trial at least two times.

Trial counsel testified that he and other members of the public defender's office had numerous meetings with Petitioner. He also spoke with Petitioner by phone. He specifically remembered meeting with Petitioner and reviewing the discovery and the case with him, including the witnesses. Trial counsel testified that the two defense plans in Petitioner's case were to attack the mens rea of the charges and the lack of a victim because she was residing in Chicago and did not want to return. He discussed the defense plans with Petitioner who did not ask any questions. Trial counsel testified that Petitioner never seemed confused about discovery, witnesses, or anything else. Petitioner actively participated in all conversations and asked questions if he had them. Trial counsel testified that he made two oral motions to dismiss the case, in Petitioner's presence, which were denied.

Trial counsel testified that Petitioner's trial was set for January 13, 2009, and his notes reflected that the victim had not been served with a subpoena at the time. Petitioner was made aware of the fact that she had not been served. Trial counsel testified that he discussed the plea agreement with Petitioner by phone and during an office visit. He again reviewed the evidence with Petitioner. Trial counsel testified that he explained the plea agreement to Petitioner, and he seemed to understand. He did not mislead Petitioner in any way about the availability of the victim. Petitioner never said that he did not want to enter the plea.

## III. Standard of Review

On appeal, Petitioner asserts that his guilty plea was not knowing and voluntary because the trial court failed to comply with the requirements of *State v. Mackey*, 553 S.W.2d

337 (Tenn. 1977), *superseded on other grounds by* Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b), and Rule 11 (b) of the Tennessee Rules of Criminal Procedure: (1) by failing to advise him that if he pled guilty, the court could question him under oath, and those answers could be used against him in a prosecution for perjury if the statements were false; and (2) by failing to advise him of the right to confront and cross-examine the witnesses against him. Although not raised by the State, we initially point out that issues framed by Petitioner on appeal are different than those raised in the trial court. At the post-conviction hearing, although Petitioner testified that no one told him that he had the right to face his accuser, the issues raised by Petitioner in the trial court centered around ineffective assistance of counsel. More specifically, Petitioner argued that trial counsel failed to adequately consult with and prepare him for trial and that trial counsel misled him into accepting the plea. However, on appeal Petitioner argues that the trial court failed to comply with the requirements of *Mackey*. An issue not presented in a petition for post-conviction relief may not be raised for the first time on appeal. T.C.A. § 40-30-106(g); *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996)("Issues raised for the first time on appeal are considered waived.").

We also point out that as noted above, this case is an appeal from the trial court's denial of post-conviction relief following an evidentiary hearing where Petitioner and his trial counsel testified. The "statement of the facts" section of Petitioner's brief, which is mandated to be included within an appellant's brief by the Tennessee Rule of Appellate Procedure 27(a)(6) ("The brief . . . shall contain . . . (6) a statement of facts setting forth the facts relevant to the issues presented for review with appropriate references to the record.") in its **totality** states as follows:

> On February 20, 2008, in Cause Number 17685, the Maury County Grand Jury indicted the Petitioner, Romalis Gray, on one (1) count of attempted first-degree murder and one (1) count of aggravated assault of the victim, Freda Willis. On January 15, 2009, the Petitioner entered a plea of nolo contendere to a reduced charge of attempted second degree murder and was sentenced to eight (8) years to be served at 30%. The charge of aggravated assault was nolle prosequi.

This purported "statement of the facts" utterly fails to comply with Rule 27(a)(6), and does nothing to even indirectly assist this Court in understanding any attempt by Petitioner to apply the law to any facts developed at the evidentiary hearing.

Nevertheless, we will address Petitioner's arguments. In a claim for post-conviction relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn.Code Ann. § 40-30-103. Petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code

Ann. § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). The post-conviction court's factual findings "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Upon review, this court will not reweigh or reevaluate the evidence below, and all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court, not this court. *Momon v. State,* 18 S.W.3d 152,156 (Tenn. 1999).

On appeal, the post-conviction court's findings of fact are entitled to substantial deference and are given the weight of a jury verdict. They are conclusive unless the evidence preponderates against them. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). A post-conviction court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001). Our supreme court has "determined that the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact, ...; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds by* Tenn. R. Crim. P. 37(b) and Tenn. R. App. P.3(b). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

In *Boykin*, the Supreme Court held that a waiver of a defendant's constitutional rights to the privilege against self-incrimination, the right to a trial by jury, and the right to confront one's accusers will not be presumed from a silent record. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1713. In *Mackey*, 553 S.W.2d 337 (Tenn. 1977), our Supreme Court expressly expanded the *Boykin* advice requirements, in the exercise of its supervisory power, and these are reflected in Rule 11 of the Tennessee Rules of Criminal Procedure. *Mackey* requires that a trial court in accepting a guilty plea in criminal cases substantially adhere to the following procedures:

> [T]he court must address the defendant personally in open court and inform him of, and determine that he understands the following:

(1) The nature of the charge to which the plea is offered, and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and , if applicable, that a different or additional punishment may result by reason of his prior convictions or other factors which may be established in the present action after the entry of his plea; and

(2) If the defendant is not represented by an attorney, that he has a right to be represented by an attorney at every state of the proceeding against him, and if necessary, one will be appointed to represent him; and

(3) That he has a right to plead not guilty or to persist in that plea if it has already been made, and , that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) That if he pleads guilty, there will not be a further trial of any kind except to determine the sentence so that by pleading guilty he waives the right to a trial; and

(5) That if he pleads guilty, the court or the state may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement, and, further, that, upon the sentencing hearing, evidence of any prior convictions may be presented to the judge or jury for their consideration in determining punishment.

*Mackey*, 553 S.W.2d at 341. The Court in *Mackey*, additionally said:

The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty results from prior discussions between the District Attorney General and the defendant or his attorney.

*Id*. at 341.

First, Petitioner argues that the trial court failed to comply with *Mackey* by failing to advise him that if he pled guilty, the court could question him under oath, and those answers

-9-

could be used against him in a prosecution for perjury if the statements were false. However, we note that some of the advice mandated in *Mackey* is not required by *Boykin*. In *State v. Prince*, 781 S.W.2d 846, 852-53 (Tenn. 1989), the Supreme Court said:

> *Mackey* mandated advice by the trial judge about the consequences of a guilty plea that went beyond the requirements of *Boykin*. In *Mackey* there are two references to the necessity of advising defendants about the use of prior convictions as factors in determining the appropriate punishment for the offense to which defendant is pleading guilty. That advice also foretells the future use of prior convictions and the future use of the case under consideration if the guilty plea is accepted. 553 S.W.2d at 341, numbered paragraphs (1) and (5). That advice and a determination that defendant understands it, is not required by *Boykin*. That advice and any other requirement of *Mackey* in excess of *Boykin* is not based upon any constitutional provision, federal or state. It follows, that any omissions, not required in *Boykin* may be relied upon on direct appeal in appropriate cases but such omissions have no validity on the first or any subsequent post-conviction proceeding. *See* T.C.A. § 40–30–105.

*See also Johnson v. State*, 834 S.W.2d 922, 925 (Tenn. 1992)("Whether the additional requirements of *Mackey* were met is not a constitutional issue and cannot be asserted collaterally."). Therefore in this case, the issue of whether the trial court advised Petitioner that his answers could be used against him in a prosecution for perjury if the statements were false is not required by *Boykin* and is not cognizable in a petition for post-conviction relief. *State v. Matthew Webb*, 2005 WL 1025772 at *7 (Tenn. Crim. App. May 3, 2005).

Next, Petitioner argues that the trial court failed to advise him of the right to confront and cross-examine the witnesses against him, which is a requirement of both *Mackey* and *Boykin*. However, the record belies this claim. The transcript of the guilty plea submission hearing reflects that the trial court addressed both Petitioner and another Defendant, who was also entering a plea in another case, and said:

> Mr. Jordan and Mr. Gray, I'm talking to both of you.
>
> You have an absolute right to trial by jury and only you can take that right away. At a trial by jury, your lawyer could cross-examine and confront State's witnesses. They could call witnesses for you, if you wanted them to. And you would not have to say one word to incriminate yourself.

The record shows that the trial court satisfied the requirements of *Boykin* in this case. Therefore, this issue is without merit.

We noted elsewhere in this opinion, that in the trial court, Petitioner's proof primarily pertained to various ways his trial counsel allegedly provided ineffective assistance of counsel, yet most of his argument in his appellate brief centers on a challenge to his plea of nolo contendere based upon the trial court's failure to state certain mandated warnings during the plea. In his brief Petitioner makes a weak argument, barely, that trial counsel provided ineffective counsel "by failing to charge the jury with the appropriate lesser-included offenses?" Since this case involved a negotiated plea of nolo contendere, and not a jury trial, we are at a loss to understand Petitioner's complaint. Obviously, Petitioner did not, and could not, cite to any portion of the record in support of this curious issue. This issue, as presented by Petitioner, is without merit.

We conclude that Petitioner has failed to show by clear and convincing evidence that his guilty plea was involuntarily or unknowingly entered. Petitioner is not entitled to relief in this appeal.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE